DONNELL et al., appellants, *v.* HUMPHREYS, respondent.

EVIDENCE — *appurtenance* — *grant.* Extrinsic evidence is admissible to show the nature and extent of an appurtenance, which passes with the principal thing granted.

APPURTENANCE — *grant of water ditch.* A water ditch cannot be appurtenant to another water ditch and pass as an incident thereto under a grant of the same.

PAROL EVIDENCE — *written instrument* — *deed* — *intention of parties* — *language.* Parol contemporaneous evidence is not admissible to contradict or vary the terms of a valid written instrument, but such evidence is competent to enable the court to ascertain the intention of the parties to the deed, and make certain the language respecting its subject-matter, and give effect to the deed.

GRANT OF WATER DITCH — *rights and incidents.* The grant of a water ditch, by general words, includes the excavated channel, the rights to the water by which it is supplied and made valuable, and another ditch which conveys the water to it.

APPURTENANCE — *part of subject-matter.* The law distinguishes between that which passes as an appurtenance, and that which passes as a part of the subject-matter.

DEED — *extrinsic evidence of ditches described.* In determining what property is conveyed by a deed, which describes the same as "the ditches known as

the Silver Bow Company's ditches," "and more particularly known as the Humphrey and Allison ditches," the court should consider extrinsic parol evidence, tending to prove that the ditch known as the "Park ditch" was one of the said ditches; that it was necessary to convey the water to the said ditches; and that the said ditches would be of no value without the "Park ditch."

*Appeal from Second District, Deer Lodge County.*

IN September, 1871, the court, KNOWLES, J., entered judgment in favor of Humphreys. The facts are stated in the opinions.

SHARP & NAPTON, for appellants.

The court should interpret and construe the deed, after knowing what property is referred to. It is to be construed in the light of surrounding circumstances in order that the intent and meaning of the parties should be perfectly understood. 1 Greenl. Ev., § 277.

It is not attempted to contradict or vary the language of the deed by parol evidence, but to explain and ascertain the subject-matter of the same. 1 Greenl. Ev., § 286 *et seq.*

After the jury had reported the facts to the court, relating to the Park ditch, the water conveyed by it, the relation of the other ditches to the same, and the value of the property with and without the Park ditch, the court could intelligibly construe the deed and gather the intent of the parties thereto. The evidence tending to show the above facts is material and should have been admitted. *Tabor v. Bradley,* 18 N. Y. 112–115 ; *Myers v. Ladd,* 26 Ill. 415 ; *Grant v. Chase,* 17 Mass. 445.

The Park ditch was conveyed as part and parcel of the granted property, or as appendant and appurtenant to the same. Such a construction by the court does not contradict or vary the language of the deed.

The court erred in excluding the evidence showing that the possession of the Park ditch was delivered to appellants at the time the deed was executed. 2 Greenl. Ev., title Ejectment; *Huttmerer v. Albro,* 18 N. Y. 51; *Plumb v. Cattaraugus C. M. I. Co.,* id. 392.

The cases above cited show this action is properly brought, and not an action to amend the deed, as contended.  No objection having been made in the lower court to the joinder of causes of action, it cannot be made for the first time in the supreme court.

The language of the deed is simply " water from Silver Bow creek."  That expression *per se,* in reference to mining water rights, needs explanation.  Frequently water rights of a ditch are artificial and constitute its only value.  The deed does not say natural water of Silver Bow creek ; consequently to construe the deed to cover artificial water would not contradict or vary its language.

The admissibility and materiality of the evidence are the only questions before this court, and not the effect of the same.

Counsel cited, as to description of property in a deed, 2 Whart. 622–630; 4 Kent's Com. 563–569 ; 4 Cruise's Dig. 203, 206, 226.

CLAGETT & DIXON, for respondent.

The complaint claims the Park ditch as a tributary, not as an appurtenance or right.  The deed says nothing about tributaries.

The deed was plain on its face, and parol evidence was not admissible to vary or contradict it.  As to when parol evidence is admissible to explain writing, see 1 Greenl. on Ev., §§ 277, 282, 283 ; 2 Pars. on Cont. 547, 563, 564.  Parol evidence is inadmissible to vary the terms of a written contract to make it embrace property not described therein.  2 Washb. Real Prop. 636 ; *Osborn* v. *Hendrickson,* 7 Cal. 282.

Land can never be appurtenant to land, and a ditch cannot be appurtenant to another ditch.  1 Bouv. L. D. 113 ; 2 Washb. Real Prop. 626 ; *Harris* v. *Elliott,* 10 Pet. 53.

The cases of *Tabor* v. *Bradley,* 18 N. Y. 112, and *Grant* v. *Chase,* 17 Mass. 445, cited by appellant, are authorities for respondent.  The question of estoppel cuts no figure in this case, nor does the alleged possession of appellants.

If the evidence had been admitted, could the verdict of

the jury, or decision of the court, have been different? If not, this court will not reverse the case. *Carpenter* v. *Norris*, 20 Cal. 437; *Merle* v. *Matthews*, 26 id. 455.

The evidence showed that the "Park" ditch conveyed water across the main divide of the Rocky Mountains and emptied it into Silver Bow creek, and that the water from it could be used in other ditches beside the Silver Bow ditches; and that there were two ditches, the "upper" ditch and "lower" ditch, that took water from Silver Bow creek. Could the court have found on this evidence that the "Park" ditch was a tributary to, or part of, or appurtenant to the other ditches, or that it could be properly included in the property described in the deed? Appellants attempt to make the deed include a different and additional ditch to the ones they bought. They must rest in this case upon the language of the deed.

If the Park ditch was intended to be conveyed, appellants should bring an action to reform the deed.

SHARP & NAPTON, for appellants, in reply.

Appellants claim the Park ditch by virtue of ownership, whether it is a tributary, an appurtenance, or part and parcel of the granted premises. The complaint alleges ownership, right of possession, and describes the property.

A ditch with water can be appurtenant to land, on the same principle that a reservoir can be an appurtenance to land. The granting words of the deed carry the feeder or tributary, which need not be mentioned. *Thayer* v. *Payne*, 2 Cush. 328.

In *Tabor* v. *Bradley*, 18 N. Y. 112, the court held as respondent states, because no such evidence was offered as appellants offered in this case.

A deed is construed most strongly against the grantor. The evidence that was excluded showed that the Park ditch was a feeder of the other ditches and had been so used for five years prior to the sale. The grantor should have expressly excepted the Park ditch in the deed, if he did not intend to convey it.

WADE, C. J. This cause comes into this court on appeal from a judgment for defendants in the court below. The action is trespass, and the complaint alleges that the plaintiffs are the owners of and are entitled to the possession of certain water ditches, known as the Silver Bow Company's ditches, and more particularly known as the ditches formerly owned by Humphreys and Allison jointly, which ditches convey the natural waters of Silver Bow creek, and the waters emptied into said creek by what is known as the Park tributary of said ditches, to Butte City and the placer mines in that vicinity, also all the water rights, tributaries, flumes, reservoirs, rights, privileges and appurtenances thereto belonging ; that on the 12th day of May, 1871, the defendant wrongfully and unlawfully cut and broke the Park tributary of said ditches, diverted the water therefrom and thereby deprived the plaintiffs of their right to the use and enjoyment thereof.

The defendant in his answer admits that the plaintiffs are the owners of, and are entitled to the possession, free use and occupation of the ditches, known as the Silver Bow Ditch Company's ditches, said ditches conveying water from Silver Bow creek to Butte City and the placer mines in that vicinity, and more particularly known as the Humphreys and Allison ditches, together with all the water rights, flumes, reservoirs, rights, privileges and appurtenances thereto belonging, but denies that the plaintiffs, or either of them, are or at any time have been the owners of or entitled to the possession, use, occupation or enjoyment of the Park ditch or the waters flowing through the same, or any right or privilege connected therewith, and denies that the defendant on the 12th day of May, 1871, or at any other time, unlawfully or wrongfully broke the said Park ditch, or diverted any waters therefrom, to which the plaintiffs are or were entitled. The record shows that on the 23d day of June, 1870, the defendant, his wife, and G. O. Humphreys joined in a conveyance and by their deed of that date conveyed to the plaintiffs the following described property, situate in the county of Deer Lodge, Territory of

Montana, to wit: "The ditches known as the Silver Bow Ditch Company's ditches; said ditches carrying water from Silver Bow creek to Butte City and the placer mines in that vicinity, and more particularly known as the Humphreys and Allison ditches. The said R. W. Donnell & Co. to have and to hold each and all of the above-described property, together with all the water rights, flumes, reservoirs, rights, privileges and appurtenances thereto belonging or in any wise appertaining."

Upon the trial, testimony was offered, tending to explain, as it was claimed, the subject-matter of this conveyance, and to show that the Park ditch was known as one of the Humphreys and Allison ditches, and to show the relation the Park ditch sustained to said ditches. Objection was made to the introduction of this testimony, and the objection was sustained. This action of the court is assigned as error.

By this testimony, it was sought to prove that the ditches known as the Silver Bow Ditch Company's ditches, and more particularly known as the Humphreys and Allison ditches, were made up of, and included what was known as the "lower ditch," the "Park ditch," and the "upper ditch;" that the lower ditch was built first, then the Park ditch, and afterward the upper ditch; that the upper and lower ditches carry water from Silver Bow creek and its tributaries to the placer mines, in the vicinity of Butte City; that the Park ditch carries water from a branch of the Bolder to Silver Bow creek; that it was built to supply the upper and lower ditches with water; that water from the Park ditch was used through the lower ditch, until the building of the upper ditch, which was in contemplation at the time the Park ditch was built; that the waters from the Park ditch have always flowed through the upper and lower ditch, and been used on the placer mines of Butte City; that the Park ditch is a feeder of the upper and lower ditches, and that the three ditches are known and reputed as the Humphreys and Allison, or the Silver Bow Ditch Company's ditches; that the plaintiffs took possession of the Park ditch, as well as of

the upper and lower ditches, at the date of the deed ; that at the time the Park ditch was constructed, its waters could not be used for mining, excepting through the upper and lower ditches, but at the date of the deed it could have been used through other ditches, but never had been used up to that time, except through the upper and lower ditches.

Was the rejection of this testimony error ?

It will be observed that this evidence shows that the three ditches in question were generally reputed and known as the Silver Bow Ditch Company's ditches, and were more particularly known as the Humphreys and Allison ditches ; that the Park ditch was built to supply the other ditches with water ; that the waters of Park ditch, up to the date of the deed, had always been conveyed through the upper and lower ditches, and used for mining purposes in the vicinity of Butte City, and at the time said Park ditch was constructed, its waters could not have been used for mining purposes in any other manner.

1. In the light of this testimony, supposing it had been received in evidence, can it be said that the Park ditch is an appurtenance of the upper and lower ditches, and that a grant of those ditches would carry with it the Park ditch ?

It is undoubtedly true that whatever is properly appurtenant to the principal thing granted passes with it, and, in order to show the existence and the nature and extent of such appurtenances, extrinsic evidence would be competent, as, if A should grant to B his farm, with all the privileges and appurtenances thereto belonging, and attached to his farm was an appurtenant easement in the form of a right of way over the lands of C, such grant would carry with it this right of way, and its existence and extent could be shown by parol evidence. It then becomes important to know what an appurtenance is, and to ascertain what things can and do attach to the principal thing granted.

A thing appendant or appurtenant is defined to be "a thing used and related to or dependent upon another thing more worthy, and agreeing in its nature and quality with

the thing whereunto it is appendant or appurtenant.". It signifies some thing appertaining to another as principal, and which passes as an incident to the principal thing.

A thing corporeal cannot properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal; so that land cannot be appurtenant to land. *Leonard* v. *White*, 6 Mass. 8; *Harris* v. *Elliott*, 10 Pet. 53; Co. Litt. 121; *Jackson* v. *Hathaway*, 15 Johns. 447.

It follows that things, in their nature equal, and of like character and grade, can never be appurtenant to each other, for the common as well as the legal meaning of the word implies inferiority and dependence, so that a water ditch could never become appurtenant to another ditch of like character, and pass as an incident thereto, for the same reason that one farm will not pass as an appurtenance to another.

This testimony shows that the park ditch is of the same character of property, and is equal to the upper or lower ditch, and therefore it is that it cannot pass under this grant as an appurtenance to those ditches. With equally as good reason it might be said that the upper or lower ditches would pass as an appurtenance to the Park ditch.

2. Is the language of the deed such that the court ought to have received extrinsic evidence in aid of its construction, and could such evidence have been introduced to show that the Park ditch passed by the deed as a part of the *sub-ject-matter* of the conveyance?

It has long been settled, and requires no citation of authorities to assert as established law, that when parties have deliberately put their contracts in writing in such terms as import a legal obligation, without uncertainty or ambiguity as to the object, nature and extent of their agreements, it is conclusively presumed that the whole of the contract was reduced to writing; and all oral testimony as to what was said before, at the time of, or after it was completed, is rejected, because it would tend to substitute an oral for a written contract. In other words, parol contemporaneous evidence is inadmissible to contradict or vary

the terms of a valid written instrument. 1 Greenl. on Ev., § 275 ; 2 Phil. on Ev., § 350 ; 2 Stark. on Ev., § 544.

And so the *intent* of the parties must be gathered from what is written rather than from parol evidence, but the language of the instrument may be construed by the light of surrounding circumstances, and, so far as possible, the court may put itself in the place of the parties, and may interpret the *language* from this standpoint, but nothing can be *added to* or *taken from* the *written words*.

So extrinsic parol evidence is always admissible to give effect to a written instrument, by applying it to its proper subject-matter, by proving the circumstances under which it was made, thereby enabling the court to put themselves in the place of the parties with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties. *Heldebrand* v. *Fogle*, 20 Ohio, 147 ; 1 Greenl. on Ev., § 277.

Instruments are to be interpreted according to their subject-matter, and parol evidence may be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers. Whatever indicates the nature of the subject, is a just medium of interpretation of the language of the parties, and is also a just foundation for giving the instrument an interpretation when considered relatively, different from that which it would receive if considered in the abstract. 1 Greenl. on Ev., § 286.

It is necessary to the validity of a grant that the thing granted should be capable of being distinguished from all other things of the kind, but it is not necessary that the description should be such as to identify the object without the aid of extraneous testimony. And when the description alludes to facts beyond the deed, parol evidence may be offered, not to contradict the description, but to locate the deed upon the land. *McChesney* v. *Wainwright*, 5 Ohio, 452 ; *Eggleston* v. *Bradford*, 10 id. 312 ; *Barton* v. *Morris*, 15 id. 408.

In the case at bar, there is a disagreement between the

parties as to the application of the deed to its proper sub_ject-matter, the plaintiff claiming, under the words of the grant, that it includes the Park ditch, and the defendants denying this proposition.

The deed purports to convey to plaintiffs the ditches known as the Silver Bow Ditch Company's ditches, conveying water from Silver Bow creek to the placer mines at Butte City, and more particularly known as the Humphreys and Allison ditches.

Looking at this language alone, was it possible for the court to say how many ditches were known as the Humphreys and Allison ditches, or that the Park ditch was not known as one of those described in the deed, or that the Park ditch did not carry water to the mines of Butte City, or that the Park ditch was not necessary in order to enable the other ditches to carry water there?

If the Park ditch was one of a system of ditches by which water was conveyed from Silver Bow creek to the mines of Butte City, and if this ditch was necessary to the successful working of this system, and was built in connection with other ditches to accomplish this purpose, and if this fabric of ditches was known as the Humphreys and Allison ditches, or as the Silver Bow Ditch Company's ditches, and each of those ditches were necessary to the usefulness of the others, and the destruction of one would have rendered the whole of no value, then in the construction and interpretation of the words of the grant these facts should have been shown to the court. Those things are certain that can be made certain, and it seems to us that the language of the deed, which is uncertain in itself, can be made certain by the aid of extrinsic evidence.

What ditches are known as the Humphreys and Allison ditches? Was and is the Park ditch one of those so known and designated? What relation does the Park ditch sustain to the other ditches? Did the Park ditch supply the other ditches with water, and were the others rendered valu able thereby, and would they be worthless unless fed and supplied by the Park ditch?

In order to work out an intelligent and just construction and interpretation of the words of the grant, all these questions should have been answered. The court will not so interpret a deed as to compel a party to pay a large sum of money for property that is worthless, when, by arriving at the true meaning of the parties by the aid of surrounding circumstances, such an interpretation might be given by applying the deed to its proper subject-matter, as would make the property equal to the sum paid. If the upper and lower ditches were valueless without the Park ditch, and all three were known as the Humphreys and Allison ditches, then we must suppose that the party paying more than $6,000 for the Humphreys and Allison ditches, and the party receiving that sum in consideration of the conveyance, intended to convey the three ditches in question, for the value of each would so depend upon the other as to make the three one property, one subject-matter. But we only intend to speak of the competency of proving these extrinsic facts in aid of the construction to be given to the deed, and it would seem that the language of the deed is such that the court could better construe and interpret its meaning by putting itself in the place of the parties, and judging of the language used by the light of surrounding circumstances.

It is claimed that, by the terms of the conveyance, the ditches granted must carry water from Silver Bow creek to Butte City, and that the grant is limited by these words to the upper and lower ditches, and that the Park ditch is thereby excluded. But if the ditches so carrying water are supplied by the Park ditch, and this ditch is absolutely necessary to produce this supply, not that this ditch simply contributes to the supply, but that it furnishes the whole of the supply, and the ditches conveyed are thereby made valuable, and would be rendered worthless, if this feeder was cut off, then it certainly would become important that the court, in giving a construction to the deed, should know these facts, and thereby arrive at the intention of the parties. By the terms of the grant the ditches conveyed must carry

water. This is the object and purpose, and if the Park ditch is absolutely *necessary* to that end, then it is covered by the conveyance. Whoever grants a thing, is supposed also to grant that without which the grant itself would be of no effect. 2 Washb. on Real Prop. 622; Broom's Max. 362.

And in order to show that the grant would be of no effect unless it carries the particular thing, parol evidence is admissible showing this extrinsic circumstance to enable the court to correctly interpret the language and thereby arrive at the true intention of the parties.

The Park ditch carries water from a branch of the Bolder to Silver Bow creek.

It was built for a purpose. It was not constructed simply to increase the waters of the creek without some ulterior design, but it was built, in connection with the upper and lower ditches, as a part of a system of works by which water can be carried from Silver Bow creek to the mines of Butte City. Water for these mines was the purpose, and the Park ditch was *necessary* to that purpose, and at the time it was built the waters thereof could only be used for this object. Its building was labor lost except it be used with the other ditches. It formed part of the works known as the Humphreys and Allison ditches.

The plaintiffs offered to prove all these facts to aid the court in construing the language of the deed, and we believe this evidence would have materially aided the court in arriving at a just interpretation thereof.

Suppose the Park ditch supplied *all* the waters of the upper and lower ditches, and but for this supply these ditches would remain dry from one end of the year to the other, could it be contended that, under the language of this grant, the plaintiffs intended to pay $6,000, and the defendant intended to receive that sum for *dry* ditches, with no supply of water and utterly worthless? We think not. But, without the aid of extrinsic evidence, a construction might be given to the words of the grant that would work out this result. And here we say again, that he who grants a thing is supposed to, and does grant that without which

the grant is worthless, and he who grants a ditch is supposed to grant not only the excavated channel, but also his rights to the water by which it is supplied and made valuable. And if this supply comes from a second ditch, the conveyance of the ditch thus supplied, by general words, would carry the second ditch as' part and parcel of the first.

3. Does the excluded testimony tend to show that the park ditch passed as a *part* and *parcel* of the *subject-matter* of the conveyance, and was it competent for that purpose?

It is important to observe the distinction between what passes as an *appurtenance* and what as *part* and *parcel* of. the subject-matter. Things equal to their principal cannot pass as appurtenant to it. Things corporeal cannot pass as appurtenant to things corporeal, a ditch to a ditch, nor land to land. But it frequently happens that land passes as *parcel* of the subject-matter, although not particularly mentioned or described in the deed. In order that it may thus pass, it must be *necessary* to the enjoyment of that which is granted, and must be *intended* to pass with it, and must be *used, reputed* and *known* as part and parcel of the principal thing.

The conveyance of a manor, a messuage, or farm, known by a certain name, and including distinct tenements, buildings or fields, which have been *used* with the principal thing and reputed parcel of it, would pass under the general name of the manor, messuage or farm. *Grant* v. *Chase*, 17 Mass. 446; *Taber* v. *Bradley*, 18 N. Y. 112.

By the grant of a messuage, or house, the garden and curtilage pass. Co. Litt. 5. If a man grant a boilery of salt, the land passes. Co. Litt. 4.

In the case of *Archer* v. *Bennett*, 1 Lev. 131, it was found by special verdict that A being seized of a mill and kiln, at the end of the close wherein the mill stood, granted the mill, and the question was whether the kiln passed, and it was held that it would have passed, if it had been found that the kiln had been *necessary* to the mill.

So the grant of a mill carries with it the use of the water by which it is worked, the flood gates, dam, and all things necessary for its use, as well as the soil and freehold of the land on which it stands and over which it projects, and such grant may embrace land adjoining it which is *necessary* for its use, and is actually used with the mill. The adjacent land, in such cases, passes as *parcel* of the principal thing granted. 2 Washb. on Real Prop. 623 ; *Blake* v. *Clark*, 6 Me. 436 ; *Forbush* v. *Lombard*, 13 Metc. 109 ; Shepp. Touchst. 89.

So, it seems that lands under certain circumstances pass as parcels of the subject-matter, when not named or described in the deed. And if the grant of a mill carries with it the water by which it is worked, the dam, flood-gates, races, as well as the soil upon which it stands, and adjacent lands for lumber yards, etc., and if the grant of a farm, known by a particular name, carries with it buildings and fields, which have been used with the principal thing, and if the grant of a house carries with it the land upon which it stands, together with the curtilage and garden, before these things can pass as part of the principal thing, or as parcel of the subject-matter, it becomes necessary that extrinsic evidence should point out the relation the parcel sustains to the sub-ject-matter. Without the aid of such evidence, the words of the grant must govern, and, thereby, the object of the conveyance be defeated. Extrinsic evidence must point out the parcel, show its relation to the principal thing, and show it necessary to the enjoyment of the thing granted. We must inquire what has been *used* with the principal thing, and what has been *reputed* and known as parcel of it, and for this purpose and for the purpose of learning the extent of the grant, and to apply the deed to its proper subject-matter, extrinsic evidence is competent.

The Park ditch may be a parcel of the Humphreys and Allison ditches, or it may not. That depends upon the re- lation it sustains to those ditches. If it stands in the same relation to the upper and lower ditches, as a mill-race does to a mill, that is, if it is necessary to the use and enjoyment

of those ditches, and they would be worthless without it, and if it was generally reputed and known as one of the Humphreys and Allison ditches, the nit is covered by the words of the grant, and passes by the deed.

The reason why things pass as parcel of the principal thing, although not named in the deed, is because they are *necessary* to the *use* and *enjoyment* of the thing granted, and because parties may be supposed to intend to make these grants beneficial and useful. Extrinsic evidence is competent to apply the description in the deed to its proper subject-matter, and to show the extent of the grant, by showing what is necessary to the enjoyment thereof, as by showing that a separate field belongs with the farm, or that a water-right belongs to a mill, and so for the same reason and for the same purpose, it may be shown that the Park ditch is one of the Humphreys and Allison ditches, and that without the Park ditch, the granted ditches would be of no value.

We, therefore, think the evidence offered, showing the relation of the Park ditch to the upper and lower ditches, and showing that the three ditches were known as the Humphreys and Allison ditches, was competent evidence to aid the court in giving the proper construction to the language of the deed.

With all the testimony before it, the court may arrive at the same conclusion as without it, but with this we have nothing to do, and we only speak of the right to introduce evidence in aid of the interpretation of the language used, and we have no doubt of the materiality of the testimony offered for this purpose.

*Judgment reversed.*

MURPHY, J., concurred.

KNOWLES, J., dissenting. I fully concur in that portion of the opinion of the court in this case upon the point that the Park ditch cannot be considered as an appurtenance to the Humphreys and Allison ditches, carrying water from Silver Bow creek to Butte City and the placer mines in that vicinity. But I entirely dissent from that portion of that

opinion that holds that, by any construction of the deed from the Humphreys to R. W. Donnell & Co., the Park ditch can be embraced therein and treated as part of the subject-matter of that conveyance. The description of the property conveyed by that deed is set forth in the following language: " The ditches known as the Silver Bow Company's ditches, said ditches conveying water from Silver Bow creek to Butte City, and the placer mines in that vicinity, and more particularly known as the Humphreys and Allison ditches."

The Park ditch, as appears by the record, conveys water from the eastern side of the main ridge of the Rocky Mountains to the western side, and usually discharged its waters into Silver Bow creek, some distance above the head of the Humphreys and Allison ditches, carrying water to Butte City.

The Park ditch, it appears, was also known by that name, although it was classed as one of the Humphreys and Allison ditches, or as one of the Silver Bow Company's ditches, Humphreys and Allison being the persons who composed that company.

The words of general description in the deed referred to, were " The Silver Bow Company's Ditches" and the "Humphreys and Allison Ditches."

These general words of description, however, I hold, were limited by those of the particular description, and these were " carrying water from Silver Bow creek to Butte City, and the placer mines in that vicinity." The particular description in a deed always controls and limits the words of general description.

Now, if testimony can so aid a court that, in the construction of that deed, it can make the Park ditch, carrying water from Boulder creek, on the east side of the Rocky Mountains, to Silver Bow creek, on the western side of the Rocky Mountains, and longer than either of the other ditches, one of the Silver Bow Company's ditches, carrying water from Silver Bow creek, which is entirely on the west side of the Rocky Mountains, to Butte City, and the placer mines in that vicinity, then a court, aided by testimony, can do more than any other human power.

The considerations that seem to impel my brother judges to hold that testimony might produce this miraculous effect, is, that possibly without the Park ditch the other two ditches might be valueless; and, therefore, it could not be presumed that the plaintiffs would have purchased these two ditches without the Park ditch, and paid $6,000 therefor. If the consideration of whether a piece of property, particularly described in a deed, would be valueless, without it was joined with another piece of property not described in the deed, are to so influence a court, in construing the deed, as to place the other piece of property within its terms as part of the subject-matter, then I see no reason why the rule may not be carried a little farther; and if another piece of property would render the piece described in a deed more valuable than it would without it, then it should be considered as embraced within the terms of the deed, and conveyed with the other as part of the subject-matter.

If A conveys to B a lot of ground, and it is found that another lot adjoining it will render it valuable, or more valuable, then the second lot would be construed as embraced within the terms of the deed as part of the subject-matter thereof. The bare statement of such a rule shows its fallacy. I am sure that in all the cases where property has been held to be conveyed as part of the subject-matter, it has been embraced within the description of the deed. When a water-mill has been conveyed, the mill-dam and race have always been treated as a part of the mill and embraced within the general description of such property, and nothing was contained in the deed which exhibited the fact that it was excluded. Here, however, this is not the case. The conveyance was limited to the Humphreys and Allison ditches, carrying water from Silver Bow creek to Butte City and the placer mines in that vicinity, and the Park ditch does not carry water from Silver Bow creek, or to Butte City, and the placer mines in that vicinity.

For these reasons I dissent from the views of my brother judges.